UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GIDDY UP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 06-CV-0948-B |
| | § | |
| PRISM GRAPHICS, INC., and | § | |
| BRYAN NETSCH, individually, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

The Court has considered Giddy Up's Motion for Award of Attorneys' Fees and Costs (doc. 85), PRISM's Response (doc. 86), and Giddy Up's Reply (doc. 90). For the reasons that follow, the Court **Grants in part and Denies in part** the Motion and finds that Giddy Up is entitled to attorneys' fees in the amount of $257,531.50. In order to recover fees for its paralegal hours, Giddy Up should submit further briefing, as discussed in this Order, withing seven days of the date of this Order.

## I. BACKGROUND

On September 24, 2007, the jury rendered a verdict stating that PRISM Graphics, Inc. ("PRISM") was liable for breach of contract, fraud, violation of the Texas Deceptive Trade Practices Act ("DTPA"), and additional damages under the DTPA and awarding Giddy Up, LLC ("Giddy Up") damages in the amount of $850,000. Although the jury found Defendant Bryan Netsch ("Netsch") liable under the DTPA, it did not award any damages against Netsch. In an order dated October 24, 2007 (doc. 84), the Court requested briefing on the issue of attorneys' fees. Giddy Up

1

submitted a motion for attorneys' fees requesting an award of $334,230 in attorneys' fees. (Pl.'s Br. 7). In its response, PRISM objected to the motion based on (1) the alleged inconsistency of the jury verdict; (2) Giddy Up's failure to designate its expert witness; and (3) the hourly rate submitted by Giddy Up. (Defs.' Br.). Having reviewed all of the briefing, the Court now turns to the merits of its decision.

## II. ANALYSIS

It is well established that a prevailing party may not recover attorneys' fees in the absence of contractual or statutory authorization. *Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992); *Gulf State Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). In this case, the jury determined that PRISM was liable for breach of contract, fraud, violation of the DTPA, and additional damages under the DTPA. Attorneys' fees are authorized for each of these causes of action. Under Texas Civil Practice & Remedies Code § 38.001, a prevailing party may recover reasonable attorney's fees for a contract claim. In addition, the Texas Supreme Court has extended this section to apply to a fraud claim arising out of a breach of contract. *Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 31 (Tex. 1990); Ralph I. Miller, Angela C. Zambrano, and David E. Pitcher, *Attorneys' Fees*, 58 SMU LAW REV. 529, 533 (2005). Giddy Up's fraud claim that PRISM "made false representations of past and existing facts concerning the '570 patent for the purpose of inducing Giddy Up to enter the License Agreement" arises out of the breach of contract; therefore, Giddy Up is entitled to attorneys' fees for the fraud claim. (Jury Instructions 11); *see McAdams v. McAdams*, 2002 WL 342639, at * 8 (Tex. App.-Amarillo 2002, no pet.) (finding attorneys' fees appropriate for a fraud claim of fraudulent inducement to sign a release). Finally, the DTPA provides that a prevailing consumer "shall be awarded court costs and reasonable and necessary attorneys' fees."

TEX. BUS. & COM. CODE ANN. § 17.50(d). Having determined that Giddy Up is entitled to attorneys' fees, the Court now turns to PRISM's objections based on the alleged inconsistency of the jury verdict.

## A. *PRISM's Objections Based on Inconsistency of the Verdict*

PRISM objects to the award of attorney's fees for Giddy Up's causes of action for fraud and DTPA because it claims that the jury verdicts are inconsistent. First, PRISM claims that the finding that Bryan Netsch did not commit fraud and that PRISM did commit fraud is inconsistent because PRISM could only act through Netsch to engage in fraud. (Defs.' Resp. 3-4). Second, PRISM contends that since the jury found that PRISM did not breach the grant of license provision, then PRISM could not have engaged in fraud or violated the DTPA because Giddy Up suffered no injury or damage. (*Id.* at 4-6).

Many circuits have held that if a party fails to object to inconsistent general jury verdicts before the jury is discharged, that objection is waived. *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318-19 (Fed. Cir. 2006) ("Under Sixth Circuit law, a party waives its objection to inconsistency in a jury's verdict if the party had an adequate opportunity to object but failed to do so."); *DiBella v. Hopkins*, 403 F.3d 102, 117 (2d Cir. 2005) ("It is well settled that if a party does not challenge the consistency of jury verdicts while the jury is still empaneled, the objection is waived"); *Mason v. Ford Motor Co., Inc.*, 307 F.3d 1271, 1275-76 (11th Cir. 2002) ("Because we conclude that two general verdicts were rendered by the jury, Ford's failure to raise its objection before the jury was discharged waived the right to contest the verdicts on the basis of alleged inconsistency."); *Howard v. Antilla*, 294 F.3d 244, 250 (1st Cir. 2002) ("Under our precedent, it is well-established that [the party who failed to object to the seemingly inconsistent verdict before the discharge of the jury]

3

forfeited any right to challenge the inconsistency by way of subsequent motion for new trial or motion for judgment as a matter of law.") (citations omitted). The First Circuit Court of Appeals has explained the rationale behind this rule:

> [T]he only efficient time to cure these possible problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused . . . . To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of [the Federal Rules of Civil Procedure] . . . to implant a ground for appeal should the jury's opinion prove distasteful . . .

*Howard*, 294 F.3d at 250 (quoting *Skillin v. Kimball*, 643 F.2d 19, 19-20 (1st Cir. 1981)). While the Fifth Circuit has not specifically adopted this rule, it has held that an objection to the inconsistency between the general verdict and some of the answers to the interrogatories is waived if a party does not object when the jury announces the verdict. *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974) ("By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies under [Federal] Rule [of Civil Procedure] 49(b).") (citing *Employers Casualty Co. v. Dupaquier*, 338 F.2d 336, 337 (5th Cir, 1964)(per curiam)). Because the Court agrees with the rationale behind this rule and can find no Fifth Circuit authority stating otherwise, the Court assumes that this rule applies. On the other hand, in the Fifth Circuit, an objection to the inconsistency of *special* verdicts is not waived if not raised prior to the discharge of the jury. *Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1040 (5th Cir. 1982). Thus, the characterization of the jury verdict as general or special will determine whether PRISM has waived its objection to the alleged inconsistency by failing to raise it before the Court dismissed the jury.

A general verdict is "a verdict by which the jury finds in favor of one party or the other, as

4

opposed to resolving specific fact questions." BLACK'S LAW DICTIONARY 1592 (8th ed. 2004). In a general verdict, "the jury pronounce[s] generally on all or any of the issues, either in favor of the plaintiff or in favor of the defendant." *Mason*, 307 F.3d at 1274 (quoting 89 C.J.S. *Trial* § 819 (2001)). A special verdict is "a verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict." BLACK'S LAW DICTIONARY 1593 (8th ed. 2004). "With a special verdict, the jury's sole function is to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury." *Mason*, 307 F.3d at 1274 (citing *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1521 (6th Cir. 1990)). "A special verdict differs from a general verdict in that the jury in rendering a special verdict finds facts without reference to the success of either litigant, while the jury in rendering a general verdict finds directly in general terms for one party or the other." *Id.* at 1274 n.5 (quoting 6 AM. JUR. *Trials* § 2, p. 1043 (1967)). Federal Rule of Civil Procedure 49(a) provides for the use of special verdicts. Federal Rule of Civil Procedure 49(b) provides for a general verdict coupled with answers to interrogatories, which is a hybrid of special and general verdicts. *Id.* at 1274. Applying these rules, the Eleventh Circuit characterized a verdict form that asked the jury to decide (1) whether the defendant was liable for negligence and (2) whether the defendant was liable for a product defect claim as one that "solicited a general verdict on each of two theories of liability." *Id.* at 1275. The Court noted that the most essential feature of a general verdict is that it requires the jury to decide which party prevails. *Id.*

In the instant case, the jury instructions on the breach of contract claims asked the jury, "Has Giddy Up proved by a preponderance of the evidence that PRISM breached [various provisions of the contract]?" (Jury Instructions 7-10). As for the fraud and DTPA claims, the instructions

5

defined these causes of actions and asked whether Giddy Up had proved by a preponderance of the evidence that the Defendants had committed these causes of actions against Giddy Up. (Jury Instructions 11-12). Based on these instructions, the jury decided whether the PRISM Defendants were liable for each cause of action; they did not decide factual issues and leave for the Court a determination of liability as in a special verdict. Like the Court in *Mason*, the Court determines that the jury rendered general verdicts on different theories of liability[1]; therefore, PRISM has waived any objection to the alleged inconsistency of these verdicts by failing to object to them before the Court dismissed the jury. Having determined that PRISM's objections to inconsistency have been waived, the Court now turns to issues to which PRISM does not object.

B.  *Presentment*

In order to recover attorneys' fees under Texas Civil Practice and Remedies Code 38.001, a party must present proof that (1) the claimant is represented by an attorney; (2) the claimant presented the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed was not tendered before the expiration of the 30th day after the claim was presented. Tex. Civ. Prac. & Rem. Code Ann. 38.002. In presenting claims to an opposing party, no particular form of presentment is required. *Panizo v. Young Men's Christian Assoc.*, 938 S.W.2d 163, 168 (Tex. App.-Houston [1st Dist.] 1996, no writ); *see also Jones v. Kelley*, 614

---

[1] This Court notes, as did the Court in *Mason*, that in *Mercer*, the Fifth Circuit characterized a verdict form requiring the jury to find for or against the defendant for three causes of actions as a submission pursuant to Fed. R. Civ. Pro. 49(a) because "No general verdict was rendered by the jury, and the District Court entered judgment only after applying the treble damages provisions of the DTPA, both factors pointing against finding a submission under Fed. R. Civ. Pro. 49(b)." *Mercer v. Long Mfg. N.C., Inc.*, 665 F.2d 61, 65 (5th Cir. 1982). In that case, the Fifth Circuit held that the party's failure to move for resubmission to the jury did not waive the right to complain of an inconsistent special verdict. *Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 947-48 (5th Cir. 1982). Despite *Mercer's* suggestion to the contrary, the Court has determined that the jury rendered a general verdict--not a special verdict-- in this case.

6

S.W.2d 95, 100 (Tex. 1981) (holding same under prior statute). All that is necessary is that the assertion of a debt or claim and request for compliance was made to the opposing party and that party refused to pay the claim. *Panizo*, 938 S.W.2d at 168 (citing *Huff v. Fidelity Union Life Ins. Co.*, 312 S.W.2d 493, 500 (Tex. 1958)). The demand need not state the specific amount sought. *Id.* at 169. However, the act of filing suit does not constitute presentment. *Jim How Homes, Inc. v. Rogers*, 818 S.W.2d 901, 904 (Tex. App.-Austin 1991, no writ). The burden of pleading and proving presentment falls on the party seeking attorneys' fees. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); *Jim Howe Homes*, 818 S.W.2d at 904.

The Court finds, and PRISM does not dispute, that Giddy Up satisfied its requirement of presentment. Among other things, Giddy Up's attorney sent a proposed settlement to PRISM's attorney, Austin England. (Ex. F). The Supreme Court of Texas has held that a settlement demand is sufficient to establish presentment. *Panizo* 938 S.W.2d at 169.

C.  *Segregation of Fees*

A party seeking attorneys' fees is required to segregate fees between nonrecoverable fees and recoverable fees. *Tony Cullo I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (citations omitted). However, fees need not be segregated when "discrete legal services advance both a recoverable and unrecoverable claim." *Id.* at 313-14. "[I]f no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (citing *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 784 (Tex. 1988)); *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 313 (Tex.App.-Texarkana 2003, no pet.); *Beard Family Partnership v. Commercial Indem. Ins.* Co., 116 S.W.3d 839, 850 (Tex. App.-Austin 2003, no pet.).

7

Giddy Up asserted that it is was not required to segregate fees[2] and in its response PRISM did not object to this failure to segregate. Accordingly, PRISM has waived any argument that segregation of fees is required.

D.      *PRISM's Objection to the Parrish Affidavit*

Before determining the appropriate amount of attorneys' fees, the Court will address PRISM's objection to William B. Parrish's ("Parrish") expert affidavit regarding attorneys' fees. PRISM argues that the Court should exclude Parrish's affidavit because Giddy Up did not disclose this expert. (Def.'s Br. 6). Giddy Up responds to this argument by stating that it offered Parrish's affidavit because it is preferable to have an affidavit from an attorney other than the party's attorney to state the prevailing local rate. (Pl.'s Reply 2). Giddy Up claims that PRISM has not been prejudiced–it presented a counter-affidavit to Giddy Up's affidavit as it would have done in response to any affidavit submitted by Giddy Up. (Pl.'s Reply 2). The Court will consider the following factors when determining whether to exclude an expert witness who was not properly designated: "(1) the explanation for the failure to identify the witness, (2) the importance of the testimony, (3) the potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *Wright v. Blythe-Nelson*, 2001 WL 804529, at * 2 (N.D. Tex. 2001) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)). In *Wright*, Chief Judge Sidney A. Fitzwater addressed a similar issue. In that case, the plaintiff designated an expert on attorneys' fees nine months after the court ordered deadline and one month before trial. Judge Fitzwater granted the plaintiff leave to designate this expert

---

[2]The Court notes that Giddy Up's contention that it was not required to segregate attorneys' fees did not address the relatively new standard stated in *Chapa*, 212 S.W.3d at 313-14.

witness and denied the defendant's motion to strike reasoning:

> This court has typically treated the designation of attorney's fee experts differently from other experts. In most instances, as in the present case, Rule 54(d) provides that attorney's fees are decided by the court on motion filed after the entry of judgment. Attorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject. Because the matter is handled by motion and usually decided on affidavits, the court can cure any prejudice that a party may face from a tardy designation by continuing submission of the attorney's fee issue if the party needs additional time to obtain its own expert.

*Id.* at *6. Based on this reasoning, the Court finds that PRISM has not been prejudiced by Giddy Up's failure to disclose Parrish as a witness and **DENIES** PRISM's motion to strike Parrish's affidavit.

### E. *Reasonable Amount of Attorneys' Fees*

The Court now considers whether attorneys' fees of $334,230 are reasonable. It is a rebuttable presumption that the usual and customary attorneys' fees are reasonable. Tex. Civ. Prac. & Rem. Code Ann. § 38.003. In determining a fee award, Texas courts consider the following factors[3]:

(1) time and labor required, novelty and difficulty of questions involved, and skill required to perform the legal services properly;

(2) likelihood that acceptance of the particular employment by the lawyer will preclude other employment;

(3) fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

---

[3] The Fifth Circuit has made it clear that Texas law, as opposed to federal law, governs the reasonableness of fees awarded where Texas law governs the rule of decision. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

9

(5) time limitations imposed by client or by circumstances;

(6) nature and length of the professional relationship with the client;

(7) experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9)).

PRISM does not contest the number of hours submitted by Giddy Up but does contest the hourly rate. (Def.'s Resp. 9). Giddy Up submitted the following summary of its attorney hours and rates:

| Name | Affiliation | Rate | Total Hours |
|---|---|---|---|
| Jay D. Ellwanger, Esq. | DiNovo Price Ellwanger LLP ("DPE") | $250 | 388.0 |
| Andrew G. DiNovo, Esq. | DPE | $250 | 304.0 |
| Andrew G. DiNovo, Esq. | Jenkens & Gilchrist, P.C. ("JG") | $420 | 78.0 |
| Craig Moore, Esq. | JG | $230 | 14.7 |
| Ross Robinson, Esq. | JG | $380 | 9.8 |

| Joseph Edwards, Esq. | JG | $465 | 1.5 |
| Alex Allemann, Esq. | JG | $285 | .8 |

Giddy Up also submitted the affidavit of William M. Parrish stating that he was familiar with the work done by Giddy Up's attorneys, the billable hour fees customarily charged in the Northern District of Texas for similar services and for attorneys or paralegals with similar levels of experience, the attorneys' reputation and ability, the results obtained, the time limits imposed, and the nature and length of the relationship between attorney and client. (Ex. C). Parrish stated that the rates charged by JG and DPE[4] for attorneys and paralegals are lower than the normal, customary, and reasonable charges in this district. (Ex. C). Giddy Up requests that the number of attorney hours be multiplied by $400. Giddy Up argues that this amount is appropriate because the rate of $250 charged by DPE was a blended rate based on a contingency fee interest of twenty percent. (Pl.'s Br. 7).

PRISM submitted an affidavit prepared by its own attorney, Austin England ("England"), on the reasonable rates. England proposes a reasonable rate of $250 stating that the rates charged by JG "may be the rates charged by enormous law firms for the work they provide to their clients, but those fees are not customary, standard or reasonable fees charged in the Northern District of Texas for breach of contract, fraud, and DTPA cases." (Defs.' Resp. 9). England stated that his rate, with eighteen years of experience, was $250 an hour and that of his co-counsel, with twenty-five years of experience, was $300. (Ex. A). England also noted that Giddy Up's attorney Andrew DiNovo had fourteen years of experience and Jay Ellwanger had six years of experience.

---

[4]Giddy Up employed JG as its counsel until March 31, 2007. On April 17, 2007, Giddy Up substituted DPE as counsel (doc. 25).

In a recent breach of contract case in the Northern District of Texas, the court found that $135 to $230 for attorneys with three to twenty-two years of experience was reasonable while $400 to $450 for an attorney with fifteen years of experience was too high. *Heliflight, Inc. v. Bell/Augusta Aerospace Co. LLC*, 2007 WL 4373259, at *6 (N.D. Tex. 2007). In a class action, a Northern District of Texas judge found rates between $200 and $550 appropriate. *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *9 (N.D. Tex. 2003). Finally, the Fifth Circuit affirmed an award with attorney rates in the range of $261 to $355 in a Northern District of Texas Title VII action. *Butler v. MBNA Technology, Inc.*, 2005 WL 1722252, at *1 (5th Cir. 2005). Under *Anderson*, the Court may take into account a contingency fee. This factor is particularly relevant because Giddy Up claims that the DPE attorneys charged a lower rate of $250 an hour because of a twenty percent contingency fee. The Court is also aware, having reviewed the filings in this case and witnessed the work of the parties during the six-day trial, that this case was complex and hard-fought. The attorney's conduct at trial demonstrated that they were well-prepared, and the result achieved was a complete success. Based on the cited cases, the contingency fee, the performance of the attorneys, and the affidavits, the Court determines that $325 an hour is a reasonable rate. The Court will reduce any rates charged by JG attorneys above $325 to $325. The Court will calculate the fees for attorneys at JG who charged less than $325 by using the actual hourly rate they billed because JG likely based these rates on the experience of these attorneys and, unlike the DPE rates, these rates were not reduced as a result of a contingency fee. The Court will also raise the $250 rate charged by the DPE attorneys to $325 to reflect the contingency fee and their performance during trial. This amounts to an award of $257,531.50 for attorney hours.

The table below summarizes the Court's calculations:

| Name | Affiliation | Rate | Total Hours | Rate X Hours |
|---|---|---|---|---|
| Jay D. Ellwenger, Esq. | DPE | $250 (increased to $325) | 388.0 | $126,100 |
| Andrew G. DiNovo, Esq. | DPE | $250 (increased to $325) | 304.0 | $98,800 |
| Andrew G. DiNovo, Esq. | JG | $420 (reduced to $325) | 78.0 | $25,350 |
| Craig Moore, Esq. | JG | $230 | 14.7 | $3,381 |
| Ross Robinson, Esq. | JG | $380 (reduced to $325) | 9.8 | $3,185 |
| Joseph Edwards, Esq. | JG | $465 (reduced to $325) | 1.5 | $487.50 |
| Alex Allemann, Esq. | JG | $285 | .8 | $228 |

*F. Paralegal Fees*

Giddy Up has requested paralegal fees in the amount of $15,510 (Pl.'s Br. 7). Under Texas law, compensation for a paralegal or legal assistant's work may be included in the award of attorneys' fees if the paralegal or legal assistant performed work that has traditionally been done by an attorney. *Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 702 (Tex. App.-Dallas 1988, writ denied); *see also All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.-Texarkana 2005, no pet. h.) (citing *Gill*, 759 S.W.2d at 702). To recover such amounts, however, evidence must be presented on the following:

(1) the legal assistant is qualified through education, training or work experience to perform

substantive legal work;

(2) substantive legal work was performed under the direction and supervision of an attorney;

(3) the nature of the legal work which was performed;

(4) the hourly rate being charged for the legal assistant; and

(5) the number of hours expended by the legal assistant.

*Gill*, 759 S.W.2d at 702. The party seeking to recover attorneys' fees for work done by paralegals and legal assistants bears the burden of producing evidence on these elements. *See Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.-Houston [14th Dist.] 1992, writ denied) (denying attorneys' fees for paralegal work when evidence did not establish qualifications, work performed, hourly rate, and hours worked by paralegal). Because Giddy Up has not presented evidence on all of the *Gill* elements, the Court **DENIES WITHOUT PREJUDICE** its motion for attorneys' fees for the paralegal hours. If Giddy Up wishes to recover attorneys' fees for its paralegal hours, it should submit briefing and evidence addressing the *Gill* requirements within **SEVEN DAYS** of the date of this **ORDER.**

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Giddy Up's Motion for Attorneys' Fees. The Court **AWARDS** Giddy Up $257,531.50 in attorneys' fees from PRISM. If Giddy Up wishes to recover fees for its paralegals, it should submit briefing within seven days of the date of this Order.

SO ORDERED

SIGNED March 12, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE